UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| DENA GIESING, | |
| Plaintiff, | |
| v. | Case No. 2:21-cv-4181-NKL |
| SCHINDLER ELEVATOR CORPORATION, | |
| Defendant. | |

## ORDER

Plaintiff Dena Giesing moves to exclude the testimony Defendant Schindler Elevator Corporation's expert witness Mr. John Donnelly. *See* Doc. 34. As explained in detail below, each of Ms. Giesing's arguments go to the weight a jury should give Mr. Donnelly's testimony, not it's admissibility. Therefore, Ms. Giesing's Motion, Doc. 34, is DENIED.

### I. BACKGROUND

Ms. Giesing worked as a respiratory therapist at St. Mary's Hospital in Jefferson City, Missouri. On October 13, 2019, Ms. Giesing claims her hand was crushed by the doors of a St. Mary's elevator known as Elevator No. 8. According to Ms. Giesing, her hand and a portion of her "workstation-on-wheels" cart obstructed the elevator's doors and protruded into the hallway, thereby blocking the elevator's WECO light curtain at the time the doors closed. The light curtain has 94 non-parallel beams that span the length of the elevator's doors; if any beam is interrupted, the detectors are designed to reopen the elevator's doors.

Schindler, who installed Elevator No. 8 and has an exclusive preventative maintenance contract with St. Mary's, suggests instead that Ms. Giesing and her cart were mostly within the elevator, and that part of her cart and hand were within the "Dead Zone" on the elevator's

threshold, a two-inch section in the elevator's doorframe that is not protected by the elevator's WECO light curtain detectors. For that to be true, none of Ms. Giesing's cart could have remained outside of the elevator; if it had, the cart would necessarily have obstructed Elevator No. 8's light curtain detector.

Mr. Donnelly, an electrical engineer with experience in elevator safety, submitted an expert report, and was later deposed. He seeks to opine:

1. This incident occurred as Ms. Giesing was entering the elevator and cleared the light curtain zone of protection.
2. The car doors closed on her hand and cart because the infrared door reopening beams were not being interrupted.
3. The door closing forces were below the maximum levels allowed by the elevator code and therefore met the requirements of the elevator code.
4. The elevator door system worked as designed and in accordance with the elevator code.
5. There was no malfunction of the elevator door system at the time of this incident.
6. The elevator was being property maintained per the contract and the custom and practice of the elevator industry.
7. The elevator doors closing on Ms. Giesing's hand was caused by her failure to keep a proper lookout, and was not attributable to any elevator malfunction or improper elevator maintenance.
8. There was nothing Schindler could or should have done to prevent this incident.

*See* Doc. 34-5 (Expert Report of John Donnelly), at 3. To reach his conclusions, Mr. Donnelly reviewed various court and discovery documents, Ms. Giesing's deposition transcript, several Service Operations Work Reports ("Work Tickets"), photographs of the elevator equipment, a Schindler Excel Spreadsheet for St. Mary's Elevator No. 8, and technical information pertaining to Elevator No. 8. Doc. 34-5, at 1. Mr. Donnelly later reviewed additional Work Tickets, and the deposition transcript of the Schindler Technician assigned to service St. Mary's elevators, Joseph Ammons. Mr. Donnelly found the additional information consistent with his original conclusions. Doc. 35-5 (Donnelly Dep.), at 35:24–36:20.

Ms. Giesing challenges many of Mr. Donnelly's conclusions under Federal R. Evid. 702, arguing that he arrived at them using insufficient facts and data and unreliable principles and

methods.

## II. STANDARD

To be admissible under Fed. R. Evid. 702, expert testimony must be both reliable and relevant. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010). To satisfy the reliability requirement, the party offering the expert testimony "must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006); *Daubert*, 509 U.S. at 589–90. To satisfy the relevancy requirement, the proponent must show that the expert's reasoning or methodology was relevant to the facts at issue. *Barrett*, 606 F.3d at 980.

Rule 702 is a rule of admissibility rather than exclusion. *Lauzon v. Senco Prods.*, Inc., 270 F.3d 681, 686 (8th Cir. 2001); *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006) ("A review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule.") (citations and quotations omitted). "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility . . . Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *U.S. v. Coutentos*, 651 F.3d 809, 820 (8th Cir. 2011) (citing *Hartley v. Dillard's Inc.*, 310 F.3d 1054, 1061 (8th Cir. 2002); *Bonner v. ISP Techs, Inc.*, 259 F.3d 924, 929–30 (8th Cir. 2001)).

## III. DISCUSSION

Ms. Giesing does not dispute Mr. Donnelly's qualifications. Instead, she focuses primarily on the facts upon which Mr. Donnelly relied and appears to fault Mr. Donnelly for reaching his conclusions without personally testing Elevator No. 8. Ms. Giesing advances four specific

3

arguments. The Court will address each in turn.

### A. Whether Mr. Donnelly's Opinions Are Relevant

Ms. Giesing's first argues that none of Mr. Donnell's opinions are relevant because they "do not fit the facts of this case." Doc. 34 (Pl.'s Suggestions in Support of Motion to Exclude), at 5. At core, Ms. Giesing's argument is that because Mr. Donnelly based his opinion on his belief that Ms. Giesing was in the "Dead Zone," which differs from her account of her injury, his opinions are irrelevant. To reach that conclusion, Ms. Giesing argues that her version of the events is uncontested and therefore suggests that Mr. Donnell's assumed facts that are "entirely his own." *See* Doc. 34, at 5–6. Ms. Giesing's argument fails.

Ms. Giesing is correct that one factor the Court must consider when admitting expert evidence is whether the opinions offered are sufficiently related to the facts of the case, and therefore will aid the jury in resolving the factual disputes between the parties. *Daubert*, 509 U.S. at 596. That said, an "expert need not agree with the fact testimony of a party." *Finke v. Hunter's View, Ltd.*, 596 F. Supp. 2d 1254, 1266 (D. Minn. 2009) (citing *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 696 (8th Cir. 2001)). Here, the Parties fiercely dispute whether Ms. Giesing was in the "Dead Zone" when she was injured. Mr. Donnelly considered Ms. Giesing's testimony, and simply concluded, based on his experience and expertise, that there was no object extending into the field of detection of Elevator No. 8's WECO light curtain detector. A jury could reasonably believe Mr. Donnelly's opinion. Accordingly, Mr. Donnelly's opinion is not "so fundamentally unsupported that it can offer no assistance to the jury." This is because Mr. Donnelly considers Ms. Giesing's version of events, and rejects it; any conflict between Mr. Donnelly and Ms. Giesing is an issue for the jury to weigh, not the Court. *Larson v. Kempker,* 414 F.3d 936, 941 (8th Cir. 2005); *Lauzon*, 270 F.3d at 695; *Wildman v. Am. Century Servs., LLC*, 2018 WL 2326628, at *3

(W.D. Mo. May 22, 2018); *Weitz Co. v. MH Washington, LLC*, 2008 WL 8625901, at *1 (W.D. Mo. Sept. 29, 2008) (While "conflicts between the testimony of a fact witness and an expert witness . . . may provide fertile grounds for cross examination, these concerns affect the weight of [an expert]'s testimony, not its admissibility.").

### B. Whether Opinions 1, 2, 4, 5, and 7 Are Based on Sufficient Facts and Reliable Methodology

Ms. Giesing next faults Mr. Donnelly for basing several of his conclusions—1, 2, 4, 5, and 7—on insufficient facts and unreliable methodology. Specifically, Ms. Giesing argues that Mr. Donnelly began his analysis with "a set of assumed, speculative, facts that have no basis in the record" and "made no effort to explore alternative explanations for the elevator doors closing on Ms. Giesing's hand." Doc. 34, at 6. Ms. Giesing highlights that Mr. Donnelly did not personally inspect or test Elevator No. 8 or any of its components, or "conduct a root cause analysis to rule out intermittent malfunctions[.]" *Id.* Mr. Donnelly also did not inspect or inquire about the dimensions of Ms. Giesing's cart. At core, Ms. Giesing appears to argue that Mr. Donnelly formed his opinion without personal knowledge of the conditions of Elevator No. 8 and failed to rule out the possibility of an elevator malfunction, as opposed to Ms. Giesing being in the "Dead Zone." Therefore, Ms. Giesing argues, his opinions should be excluded. Both challenges fail.

First, "[u]nlike an ordinary witness, *see* Rule 701, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert*, 509 U.S. at 592. Without more, the fact that Mr. Donnelly based his opinions on information provided to him, rather than data he collected, does not make his opinions inadmissible. *See, e.g.*, *Refrigeration Supplies, Inc. v. Acadia Ins. Co.*, 507 F. Supp. 3d 1096, 1103 (E.D. Mo. 2020) ("That [the expert] reached his opinion without physically examining the roof himself is certainly fodder for rigorous cross-examination, but this fact does not render his opinion

inadmissible[.]"); *Tosseth v. Remington Arms Co.*, 483 F. Supp. 3d 659, 668 (D.N.D. 2020) ("Even though [the expert] did not examine the subject pistol himself, he reviewed photographs of the subject pistol and reviewed reports and other materials from experts and the State Crime Lab Technician who handled the subject pistol. Additionally, he performed testing and examinations on an exemplar gun identical to the subject pistol[.]"). Ms. Giesing does not concretely explain why it was improper for Mr. Donnelly to rely on this data, nor does she cite any case to suggest as much. Her argument instead centers on the fact that Mr. Donnelly himself conducted no testing or measurements. That is not a requirement for admissibility. *Toman v. BNSF Ry. Co.*, 1:19-CV-00263, 2021 WL 6693849, at *6 (D.N.D. July 19, 2021) ("[C]ourts have consistently rejected the argument that an expert has to do an in-the-flesh evaluation in order to render an admissible reliable opinion."); *Dixon v. Grand Trunk W. R.R. Co.*, 259 F. Supp. 3d 702, 708–09 (E.D. Mich. 2016) (finding experts were not required to physically examine plaintiff or visit the railyard where he worked and could instead rely upon plaintiff's description of his medical history and the tasks he did at work). Here, Mr. Donnelly applied his experience and expertise as an engineer to information he gathered from Work Tickets, inspection reports, and Elevator No. 8's technical data to form each of his conclusions. From that, he may testify how Elevator No. 8 functions, its maintenance requirements, whether Schindler met those requirements, and how, from an engineering perspective, Ms. Giesing's injury is better explained by a "Dead Zone," not a malfunction. While Ms. Giesing may address the facts on which Mr. Donnelly relies on cross examination, his opinions need not be excluded as a matter of law.

Second, Mr. Donnelly need not affirmatively rule out all other possibilities to reliably form and offer his opinions. *Lauzon*, 270 F.3d at 694; *see also Dejana v. Marine Tech.*, Inc., 2013 WL 6768407, at *13 (E.D. Mo. Dec. 20, 2013) ("[A]n expert's testimony is not precluded by the failure

to rule out all other possible theories of the event; the possibility of other explanations goes to weight, not admissibility, of testimony."). Even so, Mr. Donnelly formed his opinion by considering the alternative that Ms. Giesing proposes, that the elevator malfunctioned, and affirmatively rejecting it. While Ms. Giesing disagrees with Mr. Donnelly's opinion, and maintains that she and her cart were not in the "Dead Zone," she has not suggested how Mr. Donnelly's methodology was flawed, or what alternative method he should have utilized. She simply suggests that there were various issues with the facts on which Mr. Donnelly relies. Ms. Giesing may cross examine Mr. Donnelly to suggest, and ultimately argue to the jury, that Mr. Donnelly should have done more to rule out a malfunction, such as a root cause analysis. But such attacks go to the weight of Mr. Donnelly's opinions, not their admissibility.

### C. Whether Opinion 3 is Relevant and Supported By Sufficient Facts and Reliable Methodology

Ms. Giesing also targets Ms. Donnelly's Opinion 3, which states the "door closing forces were below the maximum levels allowed by elevator code and therefore met the requirements of the elevator code." Doc. 34-5, at 3. Ms. Giesing advances two challenges: first, Mr. Donnelly did not perform his own testing, and second, the opinion is not based on sufficient facts and data. As the Court has already explained, Ms. Giesing's first argument fails. An expert's opinion need not be excluded just because the expert did not personally gather or observe the supporting data. *Daubert*, 509 U.S. at 592.

The second challenge also fails. Mr. Donnelly concluded that the door closing forces exerted by Elevator No. 8's doors were below the elevator code maximums by reviewing measurements contained in State inspection forms dated October 8, 2018, and November 12 & 13, 2019, as well as measurements taken by Schindler's technician at different times, including the day after Ms. Giesing was injured. Based on these measurements—taken before and after Ms.

7

Giesing's injury—the Court concludes that there is enough factual support for Mr. Donnelly's third conclusion. Even accepting that there is a small analytical gap in the data on which Mr. Donnelly relied—specifically, that there is no data reflecting the relevant measurements on the day of Ms. Giesing's injury—"trained experts commonly extrapolate from existing data." *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 141–42 (1997). Here, there is sufficient data from which Mr. Donnelly could extrapolate. While Ms. Giesing is of course welcome to address this extrapolation on cross, the Court cannot say that, as a matter of law, "there is too great an analytical gap between the data and the opinion proffered" such that it should be excluded as a matter of law. *Id.*; *see also Olson v. Ford Motor Co.*, 481 F.3d 619, 626 (8th Cir. 2007) ("The Supreme Court has been clear about how infirmities in expert testimony should be exposed: 'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" (citing *Daubert*, 509 U.S. at 596)).

### D. Whether Opinions 6 and 8 are Supported by Sufficient Facts and Data

Finally, Ms. Giesing argues that Opinion 6 ("The elevator was being properly maintained per the contract and the custom and practice of the elevator industry") and Opinion 8 ("There was nothing Schindler could or should have done to prevent this incident") are inadmissible because they are not based on sufficient facts or data.[1] Ms. Giesing claims that these opinions were based solely on the Preventative Maintenance Contract and the 2/14/2019 Work Ticket, and that the information contained in these two documents is insufficient to support his opinions. As an initial matter, Mr. Donnelly's report makes clear that he reviewed more than just a single Work Ticket

---

[1] While Ms. Giesing purports to address Mr. Donnelly's principles and methods, the arguments she advances relate only to the facts and data underlying this opinion. The Court will limit its analysis accordingly.

and the contract between Schindler and St. Mary's. Mr. Donnelly also reviewed work tickets from 10/14/2019 and 12/06/2019, and State inspection reports from October 8, 2018, and November 12–13, 2019. Mr. Donnelly later reviewed the deposition transcript of Schindler's elevator technician Joseph Ammons, and additional service tickets, which he concluded were consistent with his report.

Ms. Giesing argues that even this is not enough because the Work Tickets do not reflect the actual maintenance Schindler performed. The Work Tickets were automatically generated and contain a general list of maintenance tasks, and some of those tasks are inapplicable to Elevator No. 8. Furthermore, Mr. Donnelly did not know the time Schindler spent completing any maintenance tasks, as the records he reviewed did not specify. Schindler counters that this information is enough for Mr. Donnelly to determine that Elevator No. 8 was being properly maintained and that Schindler could not have avoided Ms. Giesing's injury with additional maintenance. The Court agrees. Mr. Donnelly testified that Elevator No. 8 has relatively minimal maintenance needs, requiring attention once or twice per year with only a few simple maintenance tasks. *See* Doc. 34-3, at 88:5–15. These tasks should only take a few hours of maintenance each year, according to Mr. Donnelly. *Id.* at 89:3–6.

It is reasonable that, from his experience and presented with the records available to him, Mr. Donnelly can opine on Elevator No. 8's maintenance and whether any level of maintenance could have avoided Ms. Giesing's injury. Notably, Mr. Donnelly also reviewed the deposition transcript of Mr. Ammons and found it consistent with his original report. Mr. Ammons—who serviced Elevator No. 8 for Schindler—testified that he serviced Elevator No. 8 once a year for at least the three years preceding Ms. Giesing's injury Doc. 35-2, at 7–15. What's more, he testified that he would complete any applicable task on the Work Ticket when he serviced Elevator No. 8,

effectively looking at "everything" on the elevator. *Id.* at 96:3–14. This, taken with the rest of the information available to Mr. Donnelly, is enough support to offer an *admissible* opinion. As an electrical engineer and an expert in elevator safety, Mr. Donnelly, looking at data gathered from Schindler's mechanic, State inspectors, and Elevator No. 8's own technical information, can speak to the maintenance required by Elevator No. 8, the adequacy of Schindler's work maintaining it, and whether any additional maintenance would have prevented Ms. Giesing's injury. Giesing is welcome to challenge Mr. Donnelly's opinions on cross examination. But that is, again, an issue of weight, not admissibility.

## IV. CONCLUSION

For the reasons discussed above, Ms. Giesing's Motion to Exclude Mr. John Donnelly's expert testimony, Doc. 34, is DENIED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: 09/02/2022
Jefferson City, Missouri